**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION**

| | | |
|---|---|---|
| **GateHouse Media, Inc., and GateHouse** | ) | |
| **Media Illinois Holdings, Inc.** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No. _____** |
| | ) | |
| **That's Great News, LLC** | ) | |
| | ) | |
| **Defendant.** | ) | |

## COMPLAINT

Plaintiffs GateHouse Media, Inc. and GateHouse Media Illinois Holdings, Inc., by their attorneys, Greenberg Traurig LLP, for their Complaint against defendant That's Great News, LLC, state as follows:

### JURISDICTION AND VENUE

1.      This is an action for copyright infringement under the *Copyright Act* of 1976, 17 U.S.C. §§ 101, *et seq.*, trademark infringement, unfair competition and false advertising under the *Lanham Act*, 15 U.S.C. §§ 1114 and 1125, and unfair competition, trademark infringement, and breach of contract under state law. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question), § 1338 (patents, copyrights, trademarks), § 1367 (supplemental jurisdiction) and § 2201 (declaratory judgments).

2.      Venue is proper in this district under 28 U.S.C. § 1391 and 1400(a).

### THE PARTIES

3.      Plaintiffs GateHouse Media, Inc. and GateHouse Media Illinois Holdings, Inc. (collectively, "GateHouse") are corporations organized and existing under the laws of the State of Delaware with their principal places of business in Fairport, New York.

4.     Upon information and belief, defendant That's Great News, LLC ("TGN") is a limited liability company organized and existing under the laws of Delaware with its principal place of business in Cheshire, Connecticut.

## BACKGROUND

5.     GateHouse is one of the nation's leading publishers of daily and weekly community newspapers. GateHouse publishes local newspapers and their corresponding online editions in numerous markets across the country including, *inter alia*, such publications as the *Rockford Register Star*, distributed in Rockford, Illinois and vicinity and available online at www.rrstar.com.   GateHouse's community newspaper publications and related websites reach almost 10 million readers each week.

6.     GateHouse is a well-respected source of copyrighted news reports, features and other information in the communities it serves.

7.     GateHouse has invested and continues to invest substantial resources, including time, effort, talent and creativity, in gathering and reporting local news of interest to readers.

8.     GateHouse enjoys a hard-earned reputation across the United States as a valuable source of news and information.

9.     Attached as Exhibit A hereto is a list of the titles of GateHouse's publications. Each of these titles constitutes a trademark owned by GateHouse or its subsidiaries (collectively, the "GateHouse Titles"). Attached as Exhibit B hereto is a list of trademark registrations owned by GateHouse or its subsidiaries (collectively the "GateHouse Registrations;" the GateHouse Titles and GateHouse Registrations are hereinafter referred to collectively as the "GateHouse Marks"). GateHouse has continuously provided news and information-related goods and services in interstate commerce throughout the United States under the GateHouse Marks. GateHouse's news and information goods and services are strongly associated with and identified by the

2

GateHouse Marks, and the GateHouse Marks are well known as a source of origin in GateHouse for these goods and services. GateHouse has a financial interest in its subsidiaries sufficient to seek common injunctive relief protecting the subsidiaries' intellectual property rights.

10. Over the years, GateHouse has expended a considerable amount of money and has invested great effort in advertising and promoting the GateHouse Marks and establishing the GateHouse Marks in the minds of consumers as identifiers of GateHouse's high quality goods and services.

11. By virtue of the extensive use of the GateHouse Marks and the substantial sums GateHouse has spent to promote the GateHouse Marks, the GateHouse Marks have acquired such goodwill that the public has come to associate the GateHouse Marks exclusively with GateHouse and to believe that the GateHouse Marks uniquely identify GateHouse's goods and services.

12. Paid subscribers to GateHouse's publications are entitled to receive hard copy print versions of GateHouse's publications. The electronic versions are also subscription based, and are made available only pursuant to a terms of use agreement which prohibits copying, reproduction, distribution or dissemination of the publications for "commercial purposes" ("Creative Commons License").

13. In addition to other services it provides, GateHouse, through an exclusive licensee, provides a reprint service. GateHouse's reprint service sells reprints of articles or other content previously published in GateHouse's newspapers, as well as framed copies of the articles and plaques displaying their content.

14.     Upon information and belief, TGN is in the business of selling reprints of articles and other content published by persons other than TGN, as well as framed copies and plaques displaying articles and other content published by persons other than TGN.

## DEFENDANT'S UNLAWFUL CONDUCT

15.     TGN is, and at all times relevant to the matters alleged in the Complaint was, engaged in a pattern and practice of knowingly, intentionally and willfully infringing GateHouse's copyrights and trademarks, competing unfairly with GateHouse and its licensees, engaging in deceptive trade practices, confusing consumers, breaching contracts with GateHouse and interfering with the business of GateHouse.

16.     TGN subscribes to various of GateHouse's publications and through such subscriptions and otherwise has access to both hard copy and electronic versions of GateHouse's publications, including the *Rockford Register Star*.

17.     TGN targets persons and businesses who have been written about in one of GateHouse's publications and seeks to sell them reprints of and/or plaques displaying the article in which they were mentioned in the GateHouse publication.  Upon information and belief, TGN falsely conveys that it possesses the right to make reprints of content published by GateHouse and it seeks to confuse, and is confusing, consumers into believing that its offers to sell reprints and plaques are in some way associated with, approved by or otherwise connected to GateHouse.

18.     Upon information and belief, some people or businesses who were mentioned in a GateHouse publication received faxes or emails from TGN expressly referring to "the publicity you've just received [in] the *Rockford Register Star*" which seek to entice the recipients to purchase plaques, reprints or other services from TGN.

19.     TGN also contacts persons mentioned in a GateHouse publication by telephone, and seeks to sell them plaques and reprints of the copyrighted content in which their name was

mentioned. Upon information and belief, when contacting potential customers by telephone, TGN makes statements intended to and which do confuse the recipient into believing that the call originated with or is associated with GateHouse.

20.     TGN operates an interactive web site at the internet address www.thatsgreatnews.com through which TGN solicits and accepts from persons located throughout the United States, including in Illinois, orders for plaques, reprints and other of its products and services. On occasion, the TGN web site has prominently featured unauthorized reproductions of GateHouse's copyrighted content, including both copyrighted text and photographs. TGN has featured on its web site, as an example of the reprints it sells, a copy of GateHouse's copyrighted content along with a price list for ordering reprints. At times, the home page of TGN's web site displayed copies of content from GateHouse's publications.

21.     Consumers who have been targeted by TGN have complained to GateHouse about the business practices and high pressure sales tactics employed by TGN, mistakenly believing that TGN's solicitations were made by GateHouse or that TGN's business was otherwise associated with GateHouse.  Articles published in the *Rockford Register Star* that TGN misused to engage in its deceptive and wrongful solicitations included the following:  "Eight is Enough," published on Aug. 8, 2008; "Retailers Eager to Fill Santa's Sack," published Sept. 12, 2009; and "A Career of Judgment Days," published Nov. 1, 2009.  GateHouse received numerous customer complaints about TGN's wrongful misuse of these and other articles.

22.     Owing to the confusion among its readers and subscribers caused by TGN's unlawful business practices, and in response to consumer complaints it had received concerning and as a result of those practices, the *Rockford Register Star* published a disclaimer on December

6, 2009, in both the print and online editions of the newspaper over the name and contact

information of its Executive Editor, which stated:

> A Connecticut company called That's Great News wants you to buy a commemorative wooden plaque. Although the solicitation says the company is not affiliated with the Rockford Register Star, That's Great News takes articles and photos about you from the Register Star, presents them on a wooden plaque and then sells them to you for upwards of $180.
>
> You're free to purchase these but before you decide to do so, there are some things you may want to consider:
>
> - That's Great News is in no way affiliated with the Register Star, nor with our parent company, GateHouse Media.
> - That's Great News uses Register Star content without our permission.
> - We believe That's Great News contacts people and businesses who appear in the Register Star in an effort to sell them the plaque.
> - The Register Star does not know how That's Great News gathers contact information for local residents. We never release phone numbers, addresses or e-mail addresses.
> - In at least one case, a store manager told us the plaque arrived at a local store unsolicited.
> - The Register Star would never solicit your business in this way.
> - You can purchase your photos, stories and even full-page images from the Register Star directly for as little as $15, through our MyCapture service at rrstar.com.
>
> I regret the confusion this solicitation has created in the Rock River Valley, and I encourage you to contact me directly if you have questions or concerns.

The Rockford Register Star reprinted a similar disclaimer in its editions of December 8, 9, 10

and 11, 2009.

23.    TGN's reproduction, distribution, display, creation of derivative works of, and

other use of GateHouse's copyrighted content was in each instance without the consent or

authorization of GateHouse.

24.    TGN's marketing materials and website promotion of TGN's sales of article

reprints falsely states that: "We work directly with the publisher to first secure copyright

permission." TGN has created, sold and distributed reprints of GateHouse's copyrighted articles without ever obtaining permission from GateHouse.

25.     In a Settlement Agreement entered into with GateHouse on or about October 8, 2008, TGN was prohibited, *inter alia*, from reprinting or distributing "copies of any content, including but not limited to text, artwork, photographs or other matter, appearing in any GateHouse publications." Further, "in connection with any plaques or other TGN products which contain or display content owned by GateHouse," TGN was prohibited from using "any reproductions, republications, photocopies, printouts from electronic/online versions or any other form," and from "modify[ing] or digitally manipulat[ing], upload[ing] or download[ing] any content owned by GateHouse." TGN has violated these representations and agreements.

26.     The natural, probable and foreseeable result of TGN's conduct has been, and will continue to be, to deprive GateHouse of the benefits of selling the right to reprint, distribute, make derivative works of or otherwise exploit its copyrighted content and other services, to irreparably harm GateHouse's business and goodwill, to injure GateHouse's reputation and relations with consumers and potential consumers, and to otherwise inflict harm on GateHouse.

27.     GateHouse has lost, and will continue to lose, revenues from the sale of reprints and other products and services as a result of TGN's wrongful conduct. TGN's wrongful conduct has also deprived and will continue to deprive GateHouse of opportunities to expand its goodwill.

28.     Upon information and belief, TGN intends, unless enjoined by this Court, to continue its course of conduct and to wrongfully use, infringe upon, and otherwise profit from GateHouse's copyrighted content and trademarks; to compete unfairly; to falsely advertise; to breach its agreements; and to confuse and deceive consumers.

29.     As a direct and proximate result of the acts of TGN, GateHouse already has suffered irreparable harm and has sustained losses of revenue and goodwill. GateHouse has no adequate remedy at law to redress all of the injuries that TGN has caused, and intends to cause by its conduct. GateHouse will continue to suffer irreparable damage and sustain lost revenue until TGN' s actions as described above are enjoined by this Court.

## COUNT I
## COPYRIGHT INFRINGEMENT

30.     GateHouse repeats and realleges each of the allegations set forth in paragraphs 1 through 29 above as though fully set forth herein.

31.     The local community newspapers and websites published by GateHouse are original with GateHouse and are copyrightable subject matter under the laws of the United States.

32.     GateHouse has applied for or obtained from the United States Copyright Office valid and subsisting copyright registrations for the original articles and features appearing in Rockford Register Star since at least 1994.  GateHouse's records evidencing copyright protection for the August 8, 2008, September 12, 2009, and November 1, 2009 editions are annexed hereto as Exhibit C.

33.     At all times relevant to the matters alleged herein, GateHouse or its subsidaries, as reflected in Exhibits A and B hereto, was sole owner of all right title and interest to the content of GateHouse's publications and the copyrights therein.

34.     TGN has, without consent from GateHouse, reproduced, distributed and displayed unauthorized copies of, and otherwise infringed GateHouse's copyright in articles published by GateHouse in the August 8, 2008, September 12, 2009, and November 1, 2009 editions of the *Rockford Register Star*.

35. Upon information and belief, TGN has, without consent from GateHouse, reproduced and distributed unauthorized copies of and otherwise infringed copyrights of articles published by GateHouse in numerous of its publications listed in Exhibits A and B hereto and numerous editions thereof .

36. By its actions alleged above, TGN has infringed and will continue to infringe GateHouse's copyrights in and relating to GateHouse's publications.

37. The actions of TGN are willful within the meaning of the *Copyright Act*, 17 U.S.C. §§ 101, *et seq.*

38. As a direct and proximate result of its wrongful conduct, TGN has realized profits and other benefits to which TGN is not entitled.

39. As a direct and proximate result of TGN's wrongful conduct, GateHouse has been substantially and irreparably harmed, and has suffered damages in an amount not readily capable of determination. Unless restrained by this Court, TGN will cause further irreparable harm to GateHouse.

## COUNT II
## TRADEMARK INFRINGEMENT UNDER 15 U.S.C. § 1125(a)

40. GateHouse repeats and realleges each of the allegations set forth in paragraphs 1 through 39 above as though fully set forth herein.

41. GateHouse utilizes each of the GateHouse Marks in interstate commerce and has done so exclusively and continuously for many years, in some instances since at least as early as 1882.

42. TGN has, without consent from GateHouse, used the GateHouse Marks in connection with TGN's own goods and services and its marketing and promotion thereof, in

manners which have caused actual confusion and which are likely to continue to cause confusion and mistake and to deceive consumers as to the source or origin of TGN's goods and services.

43.     By its actions alleged above, TGN has damaged GateHouse and the business and goodwill symbolized by the GateHouse Marks.

44.     By its actions alleged above, TGN has infringed and will continue to infringe the GateHouse Marks in violation of Section 43 of the *Lanham Act*.

45.     The actions of TGN constitute willful trademark infringement.

46.     As a direct and proximate result of its wrongful conduct, TGN has realized profits and other benefits to which TGN is not entitled.

47.     As a direct and proximate result of TGN's wrongful conduct, TGN has caused and is causing substantial and irreparable harm to GateHouse, the GateHouse Marks and to the business and goodwill represented by the GateHouse Marks, in an amount not readily capable of determination. Unless restrained by this Court, TGN will cause further irreparable harm to GateHouse.

### COUNT III
### TRADEMARK INFRINGEMENT UNDER 15 U.S.C. §§ 1114, 1117

48.     GateHouse repeats and realleges each of the allegations set forth in paragraphs 1 through 47 above as though fully set forth herein.

49.     GateHouse or its subsidiaries is the owner of trademark registrations on the Principal Register of the United States for many of the GateHouse Marks, as identified in Exhibit B. Many of the U.S. Trademark Registrations for the GateHouse Marks have obtained incontestable status.

50.     TGN has, without consent from GateHouse, used the registered GateHouse Marks in connection with TGN's own goods and services and its marketing and promotion thereof, in

manners which have caused actual confusion and which are likely to continue to cause confusion and mistake and to deceive consumers as to the source or origin of TGN's goods and services.

51.     By its actions alleged above, TGN has damaged GateHouse and the business and goodwill symbolized by the registered GateHouse Marks.

52.     By its actions alleged above, TGN has infringed and will continue to infringe the GateHouse Marks in violation of Section 32 of the *Lanham Act*.

53.     The actions of TGN constitute willful trademark infringement.

54.     As a direct and proximate result of its wrongful conduct, TGN has realized profits and other benefits to which TGN is not entitled.

55.     As a direct and proximate result of TGN's wrongful conduct, TGN has caused and is causing substantial and irreparable harm to GateHouse, the registered GateHouse Marks and to the business and goodwill represented by the registered GateHouse Marks, in an amount not readily capable of determination. Unless restrained by this Court, TGN will cause further irreparable harm to GateHouse.

## COUNT IV
## FALSE DESIGNATION OF ORIGIN UNDER 15 U.S.C. § 1125(a)

56.     GateHouse repeats and realleges each of the allegations set forth in paragraphs 1 through 55 above as though fully set forth herein.

57.     TGN's use of the GateHouse Marks is likely to cause and has caused consumers to mistakenly believe that TGN has an affiliation with GateHouse, or that TGN's goods and services are sponsored or approved by GateHouse, or that TGN is otherwise associated with or has obtained permission from GateHouse.

58.     As a direct and proximate result of TGN's acts of unfair competition and false designation of origin, TGN has caused and is causing substantial and irreparable injury to

GateHouse, its reputation and its goodwill, in an amount not readily capable of determination. Unless restrained by this Court, TGN will cause further irreparable harm to GateHouse.

**COUNT V**
**FALSE ADVERTISING UNDER 15 U.S.C. § 1125(a)**

59. GateHouse repeats and realleges each of the allegations set forth in paragraphs 1 through 58 above as though fully set forth herein.

60. TGN's advertising and promotion of its reprint services falsely implies that TGN works with the publisher to first secure copyright permission, or other misrepresentations of like meaning and effect, and is likely to deceive consumers into mistakenly believing that TGN possesses the right to produce the reprints offered for sale by TGN.

61. GateHouse has not licensed TGN nor given TGN permission to produce and sell reprints of GateHouse's copyrighted content, and has been irreparably harmed and will continue to be irreparably harmed unless TGN is enjoined from misrepresenting that it is authorized to produce and sell reprints of content in which GateHouse owns the copyright. In addition, consumers have been harmed, and will continue to be harmed, by TGN deceptively advertising that TGN possesses reprint rights when in fact it does not.

62. TGN's material false representations of fact on its web site and in its advertising and promotional materials misrepresent the inherent nature, characteristics and qualities of TGN's goods and services.

63. By reason of the foregoing, GateHouse is entitled to injunctive relief enjoining further false advertising by TGN, and to recover such monetary damages that have been caused by TGN's acts of false advertising.

## COUNT VI
## TRADEMARK INFRINGEMENT UNDER STATE LAW

64.     GateHouse repeats and realleges each of the allegations set forth in paragraphs 1 through 63 above as though fully set forth herein.

65.     The acts of TGN described above constitute trademark infringement under the laws of each state in which TGN has done business, including Illinois and other states in which persons or businesses were located when TGN faxed, emailed, telephoned, published, or otherwise communicated to those persons or businesses solicitations concerning, or offers to provide, reprints of or plaques depicting content from a GateHouse publication.

66.     As a direct and proximate result of TGN's wrongful conduct, TGN has caused and is causing substantial and irreparable harm to GateHouse, the GateHouse Marks and to the business and goodwill represented by the GateHouse Marks, in an amount not readily capable of determination. Unless restrained by this Court, TGN will cause further irreparable harm to GateHouse.

## COUNT VII
## ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT

### 815 ILCS 510/1 *et seq.*

67.     GateHouse repeats and realleges each of the allegations set forth in paragraphs 1 through 66 above as though fully set forth herein.

68.     The acts of TGN described above constitute false, misleading and deceptive representations.  TGN's actions created a likelihood of consumer confusion or misunderstanding as to the source or origin of the products and services being offered by TGN.  TGN's actions also constituted deceptive advertising, and served to pass off TGN's reprints, plaques and other such products as authorized or endorsed or licensed by GateHouse, when they were not.  For example,

without limitation, GateHouse received complaints about TGN's misuse of articles published in the *Rockford Register Star* on August 8, 2008, September 12, 2009 and November 1, 2009.

69.    TGN made false, misleading and deceptive statements in Illinois, where GateHouse owns and operates the *Rockford Register Star*, and caused damages in Illinois.

## COUNT VIII
## ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT

### 815 ILCS 505/1 *et seq.*

70.    GateHouse repeats and realleges each of the allegations set forth in paragraphs 1 through 69 above as though fully set forth herein.

71.    The acts of TGN described above constitute deceptive acts and practices occurring in a course of conduct involving trade or commerce.  For example, without limitation, TGN deceived consumers about the source or origin of products and services being offered by TGN, and passed off TGN's unauthorized reprints, plaques and other such products as affiliated with or endorsed or licensed by GateHouse, when they were not.

72.    TGN intended persons to rely on its deceptive acts, and caused damages as a result of its deceptive acts.

## COUNT IX
## BREACH OF CONTRACT

### [SETTLEMENT AGREEMENT]

73.    GateHouse repeats and realleges each of the allegations set forth in paragraphs 1 through 72 above as though fully set forth herein.

74.    On or about September of 2008, GateHouse discovered that TGN was engaging in the unlawful conduct described herein with respect to the *Rockford Register Star.*

75.    GateHouse issued an initial cease and desist letter on September 10, 2008, demanding that TGN immediately cease all unauthorized copying from GateHouse newspapers

(print and online) or GateHouse would commence litigation seeking injunctive relief and monetary damages based on TGN's infringing and confusing conduct.

76.     On or about October 8, 2008, GateHouse and TGN entered into a Settlement Agreement, pursuant to which GateHouse agreed to withhold filing any action against TGN in exchange for TGN's agreement, *inter alia*, to permanently cease the unauthorized copying of original content appearing in any GateHouse newspapers or websites.

77.     Robert Roscoe executed the Settlement Agreement on TGN's behalf on or about October 8, 2008, thereby indicating TGN's intent to be bound by the Settlement Agreement's provisions.

78.     Paragraph 1 of the Settlement Agreement states:

> TGN agrees to immediately cease and desist from any and all acts that infringe copyrights owned by GateHouse, including but not limited to those set forth in Attachment 1 hereto. TGN agrees that it shall not reprint or otherwise produce or distribute copies of any content, including but not limited to text, artwork, photographs or other matter, appearing in any GateHouse publications.

79.     Paragraph 2 of the Settlement Agreement states:

> TGN agrees to immediately cease and desist from, and shall not in the future engage in, advertising, soliciting, promoting or otherwise offering to provide to any person any service by which TGN would provide reprints, republications, reproductions, or copies of any content owned by GateHouse. TGN acknowledges and agrees that its obligations under this paragraph to refrain from advertising, soliciting, promoting or otherwise offering to provide reprints, republications or copies shall cover all advertising, solicitations, promotions and offers in any and all media and formats, whether communicated in print, via the internet, by email via telephone or telefax, or otherwise.

80.     Paragraph 17 of the Settlement Agreement states the parties' express agreement and acknowledgment that "a remedy at law in the event of TGN's breach of this agreement would not be adequate, and, in the event of such a breach, [GateHouse] shall be entitled to a

temporary and permanent injunction enjoining and restraining TGN from the continuance of such breach, and to other equitable remedies as a matter of right; . . . ."

81.     TGN entered into and is bound by multiple subscription agreements with GateHouse pursuant to which TGN has obtained access to GateHouse publications. Upon information and belief, employees of TGN, acting within the scope of their employment, have entered into multiple subscription agreements with GateHouse in order to obtain access to GateHouse publications for TGN, and pursuant to which TGN did in fact obtain access to GateHouse publications.

82.     Upon information and belief, subsequent to entering into the Settlement Agreement TGN has, and, if not enjoined, will continue to reprint and otherwise produce and distribute copies of text, artwork, photographs and other matter appearing in various GateHouse publications, including in the *Rockford Register Star*, in violation of paragraph 1 of the Settlement Agreement.

83.     Upon information and belief, subsequent to entering into the Settlement Agreement TGN has, and, if not enjoined, will continue to engage in advertising, soliciting, promoting and otherwise offering to provide reprints, republications or copies of text, artwork, photographs and other matter appearing in the *Rockford Register Star* and various GateHouse publications via the internet, by email, via telephone or telefax, and otherwise, in violation of paragraph 2 of the Settlement Agreement.

84.     The acts of TGN described above violate and qualify as material breaches of TGN's Settlement Agreement with GateHouse.

85.     As a direct and proximate result of TGN's violations and breaches of its agreement with GateHouse, GateHouse has been substantially harmed in an amount not readily capable of determination.

**COUNT X**
**BREACH OF CONTRACT**

**[CREATIVE COMMONS LICENSE]**

86.     GateHouse repeats and realleges each of the allegations set forth in paragraphs 1 through 85 above as though fully set forth herein.

87.     Third-party use of online content appearing on all GateHouse newspaper websites is governed by the Creative Commons License, reference to which is prominently displayed on the home page of all such websites and readily visible to all users thereof.

88.     The home page of all GateHouse newspaper websites, including the website of the *Rockford Register Star*, states, "Original content available for non-commercial use under a Creative Commons License, except where noted," and contains an icon which states "Some Rights Reserved."

89.     In the disclaimer as it appears on the home page of the *Rockford Register Star*, the phrases "Creative Commons" and "except where noted" are hotlinks which, when activated, immediately transport the user to the terms of the Creative Commons License, and any exceptions thereto, respectively.

90.     Among other restrictions, the Creative Commons License bars use of any work appearing on the website for "commercial purposes," and states that the user "may not alter, transform, or build upon this work."

91.     Upon information and belief, at all pertinent times TGN was aware of the posted restrictions on its use of GateHouse's intellectual property obtained from GateHouse's newspaper websites, including but not limited to from www.rrstar.com.

92.     TGN's use of GateHouse's intellectual property as described herein qualifies as a prohibited "commercial use" of GateHouse's property.

93.     TGN's use of GateHouse's intellectual property as described herein qualifies as a prohibited derivative use of GateHouse's property.

94.     TGN's use of GateHouse's intellectual property as described herein qualifies as a violation of the Creative Commons License and has diminished the value of the works so infringed upon.

**COUNT XI**
**DECLARATORY JUDGMENT**

**28 U.S.C. § 2201**

95.     GateHouse repeats and realleges each of the allegations set forth in paragraphs 1 through 94 above as though fully set forth herein.

96.     An actual controversy exists between GateHouse and TGN over, without limitation, whether TGN's actions violate U.S. and state copyright, trademark, deceptive practices and unfair competition law, and whether TGN has breached the Settlement Agreement and Creative Commons License.

97.     This court is capable of resolving part or all of the controversy between GateHouse and TGN by declaring the rights and legal relations of the parties.

98.     GateHouse hereby requests declaratory relief including and consistent with the request for judgment set forth below.

**WHEREFORE**, GateHouse respectfully requests this Court to enter judgment in its favor as follows:

A.      TGN and its officers, agents, servants, employees, subsidiaries, affiliates, successors and assigns, and all those in active concert or participation, directly or indirectly who receive notice be immediately and permanently enjoined from:

(i)      using, copying, reproducing, reprinting, making derivative works of or displaying any copyrighted material published in any of the GateHouse publications;

(ii)     using, displaying or referring to any of the GateHouse Marks in connection with advertising, promotion, marketing or sale of any goods or services of TGN;

(iii)    doing any other acts or things calculated or likely to cause confusion in the mind of the public or to lead consumers to believe that products or services sold, offered for sale, or distributed by TGN are authorized, sponsored, licensed, endorsed, promoted or condoned by GateHouse or otherwise connected to GateHouse;

(iv)     otherwise competing unfairly with GateHouse in any manner; and

(v)      making false or deceptive statements in its advertising.

B.      TGN be required to account to GateHouse for TGN's profits and any damages sustained by GateHouse arising from TGN's acts of copyright infringement and that GateHouse be awarded this amount;

C.      GateHouse be awarded statutory damages for willful infringement, pursuant to 17 U.S.C. § 504(c), in an amount of $l50,000 for each work of GateHouse's found to have been infringed by TGN;

D.     TGN be required to account to GateHouse for TGN's profits and any damages sustained by GateHouse arising from TGN's infringement of the GateHouse Marks, TGN's  acts of unfair competition, and TGN's acts of false advertising, and that GateHouse be awarded this amount;

E.     TGN be required to account to GateHouse for TGN's profits and any damages sustained by GateHouse arising from TGN's infringement of the registered GateHouse Marks, and that GateHouse be awarded treble this amount;

F.     GateHouse be awarded compensatory damages for TGN's breaches of contract in an amount to be determined, together with prejudgment interest thereon;

G.     GateHouse be awarded punitive damages in an amount to be determined;

H.     GateHouse be awarded its costs and disbursements incurred in connection with this action, including reasonable attorney's fees and investigative expenses; and

I.     GateHouse be awarded such other and further relief as the Court deems just and proper.

## JURY DEMAND

GateHouse hereby demands trial by jury in this action.

**DATED:**     June 30, 2010                **GREENBERG TRAURIG LLP**


By:     *s/ Daniel Hildebrand*
        Daniel G. Hildebrand
77 West Wacker Drive, Suite 3100
Chicago, Illinois 60601
Telephone:  (312) 456-8400
Facsimile:  (312) 456-8435
Email:  hildebrandd@gtlaw.com
*Attorneys for Plaintiff*
*GateHouse Media, Inc. and*
*GateHouse Media Illinois*
*Holdings, Inc.*


        Michael J. Grygiel
        William A. Hurst
54 State Street, 6th Floor
Albany, New York  12207
Telephone: (518) 689-1400
Facsimile:  (518) 689-1499
Email:  grygielm@gtlaw.com
        hurstw@gtlaw.com
*Attorneys for Plaintiffs*
*GateHouse Media, Inc. and*
*GateHouse Media Illinois*
*Holdings, Inc.*
(*pro hac vice* applications pending)

*ALB 1,336,847*